UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHRYN A. GRIFFIN,

       Plaintiff,                             Civil Case No. 11-CV-12289

vs.                                      HON. MARK A. GOLDSMITH

JENNIFER SANDERS, et al.,

       Defendants.

_____/

**OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN PART**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. 67)**

## I. INTRODUCTION

In this civil rights case, Plaintiff Kathryn A. Griffin alleges that she was subject to disability discrimination, sex discrimination, negligence, and various assaults at schools she attended. The matter before the Court is Defendants' motion for summary judgment (Dkt. 67), which seeks summary judgment in their favor as to all of Plaintiff's claims. The motion is fully briefed, and oral argument was heard on January 17, 2013. For the reasons that follow, the Court will grant in part and deny in part Defendants' motion.

## II. BACKGROUND

Plaintiff Kathryn A. Griffin is a mentally incompetent individual who suffers from a variety of serious physical and mental disabilities.[1]  10/14/2008 Robertson Letter (Dkt. 69-6).

---

[1] Plaintiff, now 25 years old, has disabilities that give her the mental capacity of a two-year old. 1/12/2009 IEP at 3 (Dkt 67-18).  Plaintiff suffers from intractable seizures, static encephalopathy, cerebral palsy, and cognitive impairment, which cause her to fall without warning.  10/14/2008 Robertson Letter (Dkt. 69-6).  Because of these disabilities, Plaintiff's

Plaintiff's parents enrolled her in schools within the Genesee Intermediate School District (GISD). Plaintiff attended the Elmer Knopf Learning Center (EKLC) from 2005-2008 and Clio High School from 2009-2010. Plaintiff's allegations arise from the conduct of employees at both schools, which Plaintiff maintains led to injury as a result of her falling down and being assaulted. The Court first addresses Plaintiff's attendance at EKLC and then reviews her time at Clio High School.

Relevant to this lawsuit is Plaintiff's attendance at EKLC from 2006-2008. During this time frame, one of Plaintiff's teachers was Defendant Jennifer Sanders. Sanders Dep. at 5 (Dkt. 67-3). Defendant Evelyn Tereau, a para-educator, worked in Sanders' classroom and assisted with Plaintiff's education. Tereau Dep. at 5 (Dkt. 67-7).

EKLC is a specialized school for students with moderate to profound cognitive impairments. Jeanne Quinlan Dep. at 95 (Dkt. 67-4). Every student at EKLC has an individualized educational program (IEP), which is specifically tailored to each student. Id. at 96. For example, if a student has a physical impairment, the IEP can address the student's needs through physical therapy, or provision of a walker or wheelchair. Id. at 98. Parents participate in the creation of their child's IEP, as was the case here, where Plaintiff's mother, Lynn Griffin, sat on the committee that prepared Plaintiff's annual IEPs, all of which she approved. Griffin Dep. at 150 (Dkt. 67-12).

One of the IEPs prepared during Plaintiff's attendance at EKLC recognized her susceptibility to falling, but did not mandate any particular technique or practice to address that issue. 3/20/2007 IEP (Dkt. 67-15). Both the school and Plaintiff's mother wanted Plaintiff to be encouraged to walk at school. Griffin Dep. at 106-108. Aware of Plaintiff's unsteady gait,

mother, Lynn Griffin, was appointed Plaintiff's guardian ad litem for this lawsuit. 5/25/2011 Order (Dkt. 6).

EKLC school staff stayed in relatively close proximity to Plaintiff when she would walk. Sanders Dep. at 48-49.  Despite these precautions, Plaintiff fell on at least twenty-one occasions when she attended EKLC, resulting in injuries, such as skinned knees and chipped teeth. Accident Reports (Dkt. 69-7).

In addition to Plaintiff's falls at EKLC, Plaintiff also complains of abuse at the hands of three individuals: an unnamed autistic student, Sanders, and Tereau.  Defendants dispute whether these episodes occurred in the manner Plaintiff alleges.

Regarding the alleged attack by the autistic student, Plaintiff maintains that, at some unspecified time during Plaintiff's time at EKLC, Plaintiff was "beaten up" by an unnamed autistic student.  The basis for this is testimony of Lynn Griffin (hereinafter referred to as "Griffin," while Plaintiff Kathryn Griffin is referred to as "Plaintiff"), who stated that she learned about this incident from a school employee.  Griffin Dep. 89-90.  Defendants maintain that the autistic student accidentally pushed a table, which bumped into Plaintiff.  Kathy Cole Decl. ¶¶ 5-6 (Dkt. 67-32).

Regarding the alleged assault by Sanders, Griffin testified that Sanders once struck Plaintiff on February 27, 2008.  Griffin Dep. at 43.  Although she had not witnessed this, Griffin stated that Sanders told this to her in a confrontation in a hallway at the EKLC.  Id. at 43. Sanders denied ever hitting Plaintiff or any other student or telling Griffin that she had struck Plaintiff.  Sanders Dep. at 61-62.

Plaintiff also alleges that Tereau sexually abused her.  Griffin testified that she had witnessed Tereau, on several occasions, kissing Plaintiff, which Griffin claimed went unaddressed by the school.  Griffin Dep. at 30.  Specifically, Griffin stated that she had witnessed four incidents of Tereau kissing and groping Plaintiff in Fall 2007.  Pl.'s Answers to

Interrogs. at 9 (Dkt. 69-12).  Griffin also testified that, on one occasion, she witnessed Tereau kissing Plaintiff on the mouth.  Griffin Dep. at 29.  The record does not indicate where this alleged incident occurred, but Griffin testified that Tereau "attacked [Plaintiff] and walked back in the classroom."  Id. at 29.  Griffin complained about the kissing by speaking with Sanders and leaving notes for EKLC's principal, Jeanne Quinlan.  Griffin Dep. 30-31; Pl.'s Answers to Interrogs. at 7 (Dkt. 69-11).

Tereau has a different version of the events.  Tereau testified that on February 8, 2008, she was walking down a hallway at EKLC with Plaintiff when Plaintiff stopped walking, grabbed her helmet, and starting screaming and crying.  Tereau Dep. at 10 (Dkt. 67-7).  Tereau took Plaintiff's helmet off to see if Plaintiff was hurt.  Id.  Tereau testified that Plaintiff grabbed her while she was screaming and did not let go. Id. at 11.  Tereau further testified that Griffin, who was in a different area of the school facility at the time, heard Plaintiff screaming and came to her.  Id. at 10-11.  Plaintiff stopped screaming before her mother arrived and Tereau told Plaintiff to go with her mom, but Plaintiff would not do so.  Id. at 11.  Tereau then kissed the top of Plaintiff's head two times and said: "Jesus, take away her pain."  Id..  Griffin did not say anything.  Id.  Tereau explained that she kissed Plaintiff's head because Plaintiff was upset, and that she was trying to console her.  Id.  Tereau testified that the only time she kissed Plaintiff was on February 8, 2008.  Id. at 23.

Griffin told EKLC's Principal, Jean Quinlan, about this incident.  Quinlan Dep. at 5. Quinlan then met with Tereau and Tereau's union representative.  Id. at 9.  Quinlan testified that she had only been made aware of the one incident of Tereau kissing Plaintiff – the February 8 incident – and had received no other complaints regarding improper contact between Tereau and Plaintiff.  Id. at 7-8.  Quinlan verbally reprimanded Tereau and placed a "memorandum of

concern" in Tereau's employee file, which was expunged after a year.  Id. at 9-12.  Quinlan told Sanders to closely watch Tereau to make sure Tereau's future conduct was appropriate and to report any concerns.   Sanders Dep. 7-8.   Sanders never observed Tereau engage in any objectionable behavior.  Id. at 10.

Griffin also reported Tereau's conduct to the Michigan Department of Human Services (DHS) and the Mundy Township Police Department.   The report to the state resulted in an investigation by Tracy Dowless, who found no substantiation for the allegations of physical abuse.  DHS Report at 2 (Dkt. 67-32).  The Mundy Police Department investigator, Detective J. Diem, similarly concluded that that there was "insufficient evidence to seek a warrant for molestation with a non-verbal child and no suspect is listed."  Diem Report at 2 (Dkt. 67-10). Diem executed an affidavit attesting that her report was accurate.  Diem Aff. (Dkt. 67-10).

On April 14, 2008, a meeting was held at EKLC concerning Griffin's complaints. Several individuals were at the meeting, including Griffin, Sanders, Tereau, Principal Quinlan, state investigator Dowless, and Detective Diem.  Given Griffin's concerns with EKLC, GISD offered to place Plaintiff in a special education program at Clio High School.  Quinlan Dep. 36-37.  That day Plaintiff ceased attending EKLC; after not attending school for several months, Griffin enrolled Plaintiff at Clio High School.  Griffin Dep. 159-160.

Beginning in January 2009, Plaintiff attended Clio High School, where one of her teachers was Defendant Shirley Heffner.  Heffner Dep. at 5.   Plaintiff fell down at Clio High School, as well.   In particular, Plaintiff fell twice at school on May 21, 2010.   5/21/2010 Accident Reports.  The accident reports do not indicate injuries to Plaintiff's teeth.  Id.  Heffner was aware that Plaintiff fell that day, but did not see any dental trauma.  Heffner Dep. at 22-24.

Griffin testified that she examined Plaintiff's teeth when Plaintiff got off the school bus on that day. Griffin Dep. at 199-200. She noted "a line" on one of Plaintiff's teeth and touched it with her finger, but then decided to ask a dentist to examine Plaintiff's teeth at an appointment scheduled two weeks later. Id. at 200. On May 24, 2010, she noticed that one of Plaintiff's teeth was damaged when Plaintiff got off the school bus. Id. Griffin testified that she then took Plaintiff to a dentist after school on May 25, 2010. Id. at 201-202. Due to Plaintiff's alleged dental trauma at school, Griffin withdrew Plaintiff from Clio High School. Griffin Dep. 204.

Plaintiff filed the instant suit in the wake of her removal from school. Plaintiff named GISD, Heffner, Sanders, and Tereau as Defendants. Plaintiff asserts eight claims in her Second Amended Complaint (Dkt. 28):

> Count I (against GISD): Disability discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.
>
> Count II (against all Defendants): Disability discrimination in violation of the Persons With Disabilities Civil Rights Act (PWDCRA), Mich. Comp. Laws § 37.1301, et seq.
>
> Count III (against all Defendants): Deprivation of substantive due process rights in violation of 42 U.S.C. § 1983.
>
> Count IV (against all Defendants): Assault and battery.
>
> Count V (against GISD): Negligence.
>
> Count VI (against Heffner and Sanders): Negligence.
>
> Count VII (against GISD): Sex discrimination in the form of sexual harassment in violation of Title IX, 20 U.S.C. § 1681, et seq.
>
> Count VIII (against GISD): Sexual discrimination in the form of sexual harassment in violation of the Elliot-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2101, et seq.

### III. SUMMARY JUDGMENT STANDARD

6

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When evaluating a summary judgment motion,

> credibility judgments and weighing of the evidence are prohibited.  Rather, the evidence should be viewed in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Thus, the facts and any inferences that can be drawn from those facts must be viewed in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Biegas v. Quickway Carriers, 573 F.3d 365, 373 (6th Cir. 2009) (quotation marks and brackets omitted).

When a defendant seeks summary judgment, the defendant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quotation marks omitted). "But there is 'no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.'"  Harvey v. Campbell Cnty., 453 F. App'x 557, 560 (6th Cir. 2011) (quoting Celotex, 477 U.S. at 323).

## IV. ANALYSIS

Defendants argue that summary judgment should be granted in their favor on each of Plaintiff's eight claims.  In addition to contesting Plaintiff's claims on the merits, Defendants make two additional arguments: (i) Plaintiff's federal civil rights claims should be dismissed because she failed to exhaust administrative remedies, as required under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, et seq., and (ii) Plaintiff's claims under Michigan's Persons With Disabilities Civil Rights Act (PWDCRA), Mich. Comp. Laws §

37.1301, et seq., are precluded by the Michigan Mandatory Special Education Act (MMSEA) Mich. Comp. Laws § 380.1701, et seq.  As explained below, these arguments are meritorious, in part, and result in the dismissal of some portions of the complaint.  The balance of Defendants' arguments results in the dismissal of additional portions of the complaint, but some claims remain for trial.

### A. Administrative Exhaustion Under the IDEA

The IDEA requires plaintiffs to exhaust their administrative remedies before bringing suit in federal court seeking relief that is also available under the IDEA.  Doe v. Smith, 879 F.2d 1340, 1343-1344 (6th Cir. 1989).  The statute provides, in relevant part:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l).  Subsections (f) and (g) provide for a due process hearing and appeal before a state agency.  20 U.S.C. § 1415(f), (g).

Defendants argue that Plaintiff's failure to exhaust administrative remedies under the IDEA bars her federal civil rights claims.  Defs.' Mot. at 15-20 (Dkt. 67).  Defendants' argument is premised on the contention that Plaintiff's federal civil rights claims are based, at least in part, on the allegation that the schools failed to implement Plaintiff's IEPs properly.  Id.  In response, Plaintiff argues that she does not seek relief related to her education; that exhaustion would be futile because the administrative process cannot undo the harm she had allegedly suffered; and that only money damages will make her whole.  Pl.'s Resp. at 24-25 (Dkt. 69).  As explained

fully below, the Court agrees that Plaintiff was required to exhaust some of her claims, to the extent that they related to the provision of her education.

The IDEA's exhaustion requirement reflects Congress's intent to create efficacious means of resolving disability disputes in the educational arena, in certain circumstances, prior to filing an action in district court. S.E. v. Grant Cnty. Bd. of Educ., 544 F.3d 633, 643 (6th Cir. 2008) (exhaustion designed to facilitate "comprehensive administrative process" for "resolution of differences in educational setting"). The process is not merely a matter of form, but establishes an avenue for self-correction of errors by those closest to the contentious environment and potentially avoids the delay and expense of protracted judicial involvement. Id.

The exhaustion requirement is triggered whenever a plaintiff seeks relief that is available under the IDEA. Id. at 641-642 (citing 20 U.S.C. § 1415(l)). This means that exhaustion is required when a claim is expressly based on the IDEA. See Long v. Dawson Springs Ind. Sch. Dist., 197 F. App'x 427, 433-434 (6th Cir. 2006) (holding that the plaintiff had to exhaust administrative remedies where case involved IDEA claims). A plaintiff must also exhaust administrative remedies when seeking injunctive relief related to her education. Grant, 544 F.3d at 641-642 (holding that plaintiff had to exhaust administrative remedies where plaintiff sought an order requiring defendant to provide plaintiff "with a compensatory education program sufficient to remediate [plaintiff's] academic deficiencies"). Further, courts have held that a plaintiff must exhaust administrative remedies when asserting a claim that is premised on the denial of the federally established right to a "free appropriate public education." See Adam Wayne D. ex rel. David D. v. Beechwood Ind. Sch. Dist., 482 F. App'x 52, 59 (6th Cir. 2012) (holding that plaintiff did not have opportunity to exhaust administrative remedies properly in action claiming denial of free appropriate education under the Rehabilitation Act).

As summarized by one court, exhaustion is required in three IDEA-related contexts:

> First, exhaustion is clearly required when a plaintiff seeks an IDEA remedy or its functional equivalent.  For example, if a disabled student files suit under the ADA and challenges the school district's failure to accommodate his special needs and seeks damages for the costs of a private school education, the IDEA requires exhaustion regardless of whether such a remedy is available under the ADA, or whether the IDEA is mentioned in the prayer for relief.
>
> * * *
>
> Second, the IDEA requires exhaustion in cases where a plaintiff seeks prospective injunctive relief to alter an IEP or the educational placement of a disabled student.
>
> * * *
>
> Third, exhaustion is required in cases where a plaintiff is seeking to enforce rights that arise as a result of a denial of a free appropriate public education, whether pled as an IDEA claim or any other claim that relies on the denial of a [free appropriate public education] to provide the basis for the cause of action (for instance, a claim for damages under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, premised on a denial of a [free appropriate public education]). Such claims arise under either the IDEA (if the IDEA violation is alleged directly) or its substantive standards (if a § 504 claim is premised on a violation of the IDEA), so the relief follows directly from the IDEA and is therefore "available under this subchapter." 20 U.S.C. § 1415(l ).

Payne v. Penninsula Sch. Dist., 653 F.3d. 863, 875 (9th Cir. 2011).

Like other courts, the Sixth Circuit has recognized that exhaustion is not required under the IDEA where exhaustion would be futile.  Covington v. Knox Cnty. Sch. Sys., 205 F.3d 912, 917 (6th Cir. 2000).  A plaintiff can avoid exhaustion by demonstrating that going through the administrative process "would be futile or inadequate to protect the plaintiff's rights."  Id.  For example, Covington held that the plaintiff demonstrated futility where the student had already graduated from school, his injuries were in the past, and money damages were the only remedy that could make him whole.  Id.  See also A.L. v. Ann Arbor Pub. Schs., No. 10-10354, 2011 WL 87262, at *6 (E.D. Mich. Jan. 11, 2011) (holding that plaintiff had demonstrated futility

10

where the alleged injuries arose from a failure to implement an IEP properly, but plaintiff had graduated from school and could not receive further education).  Thus, courts have generally analyzed claims in two steps: first, a court determines whether a plaintiff has an exhaustion obligation; second, a court examines whether the plaintiff has demonstrated futility that would excuse exhaustion.

Here, the Court concludes that portions of Plaintiff's claims under the ADA, the Rehabilitation Act, and § 1983 are subject to exhaustion.  Specifically, the Court holds that Plaintiff's claims against GISD for violations of the ADA and the Rehabilitation Act in Count I are subject to exhaustion to the extent that they are premised on Plaintiff's allegation that the school "refused to comply with the IEP."  Second Am. Compl. ¶ 53a (Dkt. 28).  Further, exhaustion is required for the portions of Plaintiff's § 1983 claims against Sanders and Heffner in Count III that allege that the teachers failed "to follow Katie's IEP's directions and by allowing Katie to walk without one[-]on[-]one help as required by the IEP."  Id. ¶ 74a.

It is irrelevant that Plaintiff did not expressly plead an IDEA claim.  Because portions of these claims arise under the substantive standards of the IDEA, the relief would follow from the IDEA and is, therefore, "available under this subchapter." 20 U.S.C. § 1415(l); Payne, 653 F.3d. at 875.  Consequently, the portions of these claims that are so premised trigger the administrative exhaustion requirement of the IDEA.

Although the exhaustion requirement applies to portions of these claims, Plaintiff can be excused from the exhaustion requirement only by demonstrating that exhaustion would be futile. Covington, 205 F.3d at 917.  In support of futility, Plaintiff argues that her case is similar to A.L. v. Ann Arbor Public Schools, No. 10-10354, 2011 WL 87262 (E.D. Mich. Jan. 11, 2011),

because she "does not seek relief related to her educational process, but seeks damages as the only adequate remedy."  Pl.'s  Mot. at 25.

The Court rejects this argument.  Like the plaintiff in <u>A.L.</u>, Plaintiff here was removed from school by her parents.  However, unlike <u>A.L.</u>, Plaintiff here has been eligible for services during the pendency of this suit, and unlike the plaintiff in <u>A.L.</u>, Plaintiff here has not yet graduated from school.  <u>A.L.</u>, 2011 WL 87262, at *6.  Thus, Plaintiff could have taken advantage of the administrative process while still in the school system.  Furthermore, limiting the prayer for relief to monetary damages will not, without more, establish the futility of the administrative process and permit bypassing the IDEA's procedures.  <u>Covington</u>, 205 F.3d at 917.

The Court concludes that Plaintiff has failed to demonstrate futility for the portions of her ADA and Rehabilitation Act claims and the § 1983 claims against Heffner and Sanders that relate to her IEP.  Therefore, the Court lacks jurisdiction over the portions of the claims that relate to Plaintiff's IEP and dismisses them without prejudice.  <u>Grant</u>, 544 F.3d at 641-643.

However, the portions of Plaintiff's ADA and Rehabilitation Act claims against GISD and § 1983 claim against Sanders that are unrelated to Plaintiff's IEP are not subject to the exhaustion requirement.  The portions of the ADA/Rehabilitation Act claims not requiring exhaustion are the following: (i) GISD failed to supervise its students so that Plaintiff was beaten by an autistic student; (ii) GISD allowed Tereau to molest Plaintiff; (iii) GISD allowed Sanders to strike Plaintiff; (iv) GISD failed to train its employees, and (v) GISD failed to take "remedial action."  Second Am. Compl. ¶¶ 74b-74f.  Similarly, the portion of the § 1983 claim against Sanders alleging that Sanders struck Plaintiff and allowed an autistic student to attack Plaintiff, Second Am. Compl. §§ 74e-74f, does not trigger exhaustion.  Additionally, Plaintiff's Title IX claim against GISD and § 1983 claim against Tereau containing allegations of sex discrimination

12

and tortious conduct are not related to Plaintiff's IEP or the IDEA. The administrative exhaustion requirement was likewise not triggered for these claims.

### B. Claims Under the ADA and the Rehabilitation Act

Having determined that the bulk of Plaintiff's ADA and Rehabilitation Act claims are not barred by failure to exhaust administrative remedies under the IDEA, the Court turns to the merits of these claims. Defendants argue that these claims should be dismissed because Plaintiff cannot establish that she was discriminated against on the basis of her disability. Def.'s Mot. at 24-27. The Court agrees.

Claims brought under the Rehabilitation Act are treated in the same manner as ADA claims, and courts analyze such claims together. S.S. v. E. Ky. Univ., 532 F.3d 445, 452-453 (6th Cir. 2008) (analyzing ADA and Rehabilitation Act claims together because "the reach and requirements of both statutes are precisely the same"). Therefore, in connection with both the ADA and Rehabilitation Act claims, the Court considers the requirements for a claim for disability discrimination under § 504 of the Rehabilitation Act:

> (1) The plaintiff is a "handicapped person" under the Act; (2) The plaintiff is "otherwise qualified" for participation in the program; (3) The plaintiff is being excluded from participation in, or being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap; and (4) The relevant program or activity is receiving Federal financial assistance.

G.C. v. Owensboro Pub. Schs., 711 F.3d 623, 635 (6th Cir. 2013) (citing Campbell v. Bd. of Educ. of Centerline Sch. Dist., 58 F. App'x 162, 165 (6th Cir. 2003).[2]

In the present case, the ADA and Rehabilitation Act claims are premised on GISD's "allowing" Tereau and Sanders to engage in improper conduct against Plaintiff, failing to

---

[2] The substantially similar requirements for an ADA claim are that the plaintiff (1) is disabled as defined by the ADA, (2) "otherwise qualified" for participation in a program, and (3) being denied the benefits of or being dismissed from the program based on her disability. Pangburn v. N. Ky. Univ., 210 F.3d 372 (Table), at *2 (6th Cir. 2000).

properly train its employees, and failure to supervise students.  But there is no evidence that such actions were based in any way on Plaintiff's handicap.  Without such evidence, Plaintiff cannot satisfy the requirement that the "discrimination [was] solely by reason of [her] handicap.  G.C., 711 F.3d at 635.

Plaintiff attempts to circumvent this deficiency by claiming that the "test for determining whether a school district has discriminated against a student on the basis of her disability is whether the school district was deliberately indifferent to the abuse."  Pl.'s Resp. at 26.  But Plaintiff offers no authority from the Sixth Circuit supporting that view.  Given that the Sixth Circuit has required a plaintiff to demonstrate school officials' "bad faith" or "gross misjudgment" to establish a § 504 claim, see G.C., 711 F.3d at 635, it seems unlikely that the Sixth Circuit would be prepared to hold that deliberate indifference, without more, would be sufficient to establish such a claim.  Without such authority, this Court will not conclude that discrimination can be established by simply showing deliberate indifference.[3]

The ADA and Rehabilitation Act claims based on Plaintiff being attacked by an autistic student suffer from an additional deficiency.  Because these claims involve a case of peer-on-peer harassment in the disability context, the Sixth Circuit has held that a plaintiff must show that (i) she was an individual with a disability, (ii) she was harassed based on his disability, (iii) the harassment was sufficiently severe or pervasive that it altered the condition of her education

---

[3] The cases cited by Plaintiff are hardly persuasive on this point.  See Pl.'s Resp. at 26-27 (citing Vicky M. v. Ne. Educ. Intermediate Unit, 689 F. Supp. 2d 721, 736-737 (M.D. Pa. 2009) (explaining elements of disability discrimination claim without reference to "deliberate indifference"); J.P.M. v. Palm Beach Cnty. Sch. Bd., 877 F. Supp. 2d 1309 (S.D. Fla. 2012) (analyzing § 504 claim under deliberate indifference standard because parties used that standard), superseded and amended, No. 10-80473, 2013 WL 360043 (Jan. 30, 2013); and Miles v. Cushing Pub. Schs., No. 06-1431, 2008 WL 4619857, at *2 (W.D. Okla. Oct. 16, 2008) (in applying "deliberate indifference" standard to a § 504 claim, the court noted that "bad faith" or "gross misjudgment" are different standards utilized in other circuits).

and created an abusive educational environment, (iv) the defendant knew about the harassment, and (v) the defendant was deliberately indifferent to the harassment.  S.S., 532 F.3d at 454.

Plaintiff cannot meet this standard for two reasons.  First, Plaintiff has not presented any admissible evidence that she was harassed by the autistic student at all.  The evidence Plaintiff submitted consisted of an interrogatory answer in which Griffin stated that another person told her that Plaintiff had been beaten by the autistic student.  See Pl.'s Answers to Interrogs at 14 (Dkt. 69-11) ("Kathy Cole told me that she came running into the room during the beating and it took a number of teachers and other personnel to pull the autistic student off of [Plaintiff.]").  Griffin repeated this at her deposition.  Griffin Dep. at 88.  However, these statements attributed to Cole by Griffin are hearsay and cannot be used to forestall summary judgment.  Worthy v. Mich. Bell Tel. Co., 472 F. App'x 342, 343 (6th Cir. 2012) ("Although a district court may consider some forms of hearsay evidence in deciding a motion for summary judgment, Fed. R. Civ. P. 56(c), such evidence must still be admissible at trial.").[4]

The second reason Plaintiff's peer-on-peer harassment claim fails is that, even if Plaintiff had presented admissible evidence demonstrating that the event occurred, Plaintiff cannot establish the harassment element required to make a prima facie case of peer-on-peer harassment.  Courts have held that a student must be subject to "harassment," meaning conduct that is "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school."  S.S. 532 F.3d at 454.  Plaintiff has alleged one instance of objectionable conduct, but "harassment" must occur repeatedly, over an extended period.  See Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629

---

[4] Although irrelevant of the Court's analysis, the hearsay statement was contradicted by a declaration by Cole that states that the autistic student accidentally pushed a table, which bumped into Plaintiff.  Kathy Cole Decl. ¶¶ 5-6 (Dkt. 67-32).

(1999) (harassment included numerous incidents over six months); <u>K.M. v. Hyde Park Cent. School Dist.</u>, 381 F. Supp. 2d 343 (S.D.N.Y. 2005) (harassment occurred over two school years). Even if Plaintiff had presented admissible evidence with respect to being beaten by an autistic student at school, the alleged incident occurred once; this does not amount to peer-on-peer harassment.[5]

Therefore, the Court dismisses the ADA and Rehabilitation Act claims in their entirety.

## C.  Claims Under Michigan's Persons With Disabilities Civil Rights Act

In Count II of the second amended complaint, Plaintiff asserts claims against all Defendants under Michigan's Persons with Disabilities Civil Rights Act (PWDCRA), Mich. Comp. Laws § 37.1402.  That statute prohibits discrimination by educational institutions on the basis of disability.

Defendants argue that Plaintiff's claims under the PWDCRA are improper because these claims – premised on denial of educational opportunities – are preempted by the Michigan Mandatory Special Education Act (MMSEA), Mich. Comp. Laws § 380.1701, <u>et seq.</u>  Defs.' Mot. at 20-21.  Defendants also argue that, even if the MMSEA does not preempt Plaintiff's claims, summary judgment should be granted in their favor because Plaintiff cannot establish deliberate indifference or that she was discriminated against on the basis of her disability – both requirements for establishing a PWDCRA claim.  <u>Id.</u> at 24-27.  In response, Plaintiff concedes that the MMSEA preempts her PWDCRA claim against GISD because the claim relates to educational issues and could have been addressed in Plaintiff's IEP.  Pl.'s Resp. at 32.  However,

---

[5] Plaintiff's reliance upon <u>Galloway v. Chesapeake Union Exempted Village Schools Board of Education</u>, No. 11-cv-850, 2012 WL 5268946 (S.D. Ohio Oct. 23, 2012), undermines her argument.  In <u>Galloway</u>, the plaintiffs asserted allegations of disability discrimination of the plaintiff's seizure disorder spanning the sixth through eleventh grades in the complaint to survive a motion to dismiss.  <u>Id.</u> at **7-8.  Here, Plaintiff presents no evidence and does not argue that the autistic student attacked Plaintiff – a singular instance – because she was disabled.

Plaintiff contends that the alleged abuse by Defendants Tereau and Sanders is not related to education and cannot be preempted.  Id.

### 1.  Preemption of PWDCRA Claims by the MMSEA

The PWDCRA prohibits discrimination by educational institutions on the basis of disability:

> An educational institution shall not . . . [d]iscriminate in any manner in the full utilization of or benefit from the institution, or the services provided and rendered by the institution to an individual because of a disability that is unrelated to the individual's ability to utilize and benefit from the institution or its services, or because of the use by an individual of adaptive devices or aids.

Mich. Comp. Laws § 37.1402(a).   However, Michigan courts have held that the comprehensive scheme of MMSEA preempts claims arising under the PWDCRA, if the claims relate to a student's education, because the latter statute addresses disabilities more generally than does the MMSEA, which targets specifically educational disabilities. Miller ex rel. Miller v. Lord, 686 N.W. 2d 800, 803 (Mich. Ct. App. 2004).[6]

Claims relating to an IEP are considered related to a student's education, and thus must be brought under the MMSEA as the more specific statute.  See id. at 804 (explaining that where student complained about being required to stay in a hallway as a disciplinary measure – an issue addressed in his IEP – "the challenged actions (or inactions) by defendants revolved around an

---

[6] In holding that the MMSEA preempts the PWDCRA in Miller, the Michigan Court of Appeals did not point to a specific provision of the MMSEA.  Instead, the court explained that the MMSEA was enacted under the IDEA, which required the implementation of IEPs.  Miller, 686 N.W.2d at 802.   Michigan chose to implement IEPs through administrative regulations. "'Pursuant to the [MMSEA], regulations have been promulgated controlling the preparation, content, and appeal of IEPs.'"  Id. (quoting Jenkins v. Carney-Nadeua Pub. Sch., 505 N.W.2d 893, 894 (Mich. Ct. App. 1993)).  The specificity of the MMSEA makes it the controlling statute rather than the PWDCRA because "[s]pecific statutes prevail over general statutes covering the same subject matter."  Jenkins, 505 N.W.2d at 894.

issue dealt with in the IEP, [and caselaw] require[s] that plaintiffs' claim under the PWDCRA be precluded by the MMSEA").

Turning to the allegations in the instant case, the Court concludes that Plaintiff's claims against GISD and Heffner are preempted by the MMSEA, but that the claims against Sanders and Tereau are not. Plaintiff's PWDCRA claims against GISD and Heffner arise from the alleged failure of the school district and Heffner to implement properly Plaintiff's IEP to prevent her from falling down at school. The inactions of GISD and Heffner are in the same vein as the action by the defendants in Miller, in that in both cases the subject matter of the PWDCRA claims had been addressed in the students' IEPs. Therefore, Plaintiff's claims against GISD and Heffner are preempted by the MMSEA.

However, the MMSEA does not bar the claims for the alleged tortious conduct by GISD's employees that do not relate to Plaintiff's IEP. Miller, 686 N.W.2d at 804. Plaintiff's allegations that Sanders struck her and that Tereau sexually abused her have nothing to do with Plaintiff's IEP. Thus, the MMSEA does not bar the claims against Tereau and Sanders under the PWDCRA.

### 2.  The Remaining PWDCRA claims against Sanders and Tereau

Having concluded that the MMSEA does not bar Plaintiff's PWCRDA claims against Sanders and Tereau, the Court must now assess the merits of these claims. The "PWDCRA generally protects only against discrimination based on physical or mental disabilities that substantially limit a major life activity." Peden v. City of Detroit, 680 N.W.2d 857, 864 (Mich. 2004). To state a claim under the PWDCRA, a plaintiff must demonstrate (i) that she is disabled as defined by the act; (ii) that she is qualified for an educational opportunity that she seeks despite her disability; and (iii) that, in spite of these qualifications, she has not been given an

equal opportunity to secure similar education as other persons.  <u>Hoot v. Milan Area Schs.</u>, 853 F. Supp. 243, 248 (E.D. Mich. 1994) (citing <u>Crancer v. Bd. of Regents</u>, 402 N.W.2d 90 (Mich. Ct. App. 1986)).  The elements of a PWDCRA claim are similar to those of an ADA claim, where a plaintiff must establish that she is "(1) disabled under the statute, (2) 'otherwise qualified' for participation in the program, and (3) being excluded from participation in, denied the benefits of, or subjected to discrimination under the program by reason of his or her disability."  <u>S.S. v. E. Ky. Univ.</u>, 532 F.3d 445, 453 (6th Cir. 2008).  A plaintiff must prove that she has "either been subjected to discrimination or excluded from a program or denied benefits solely by reason" of her disability.  <u>Id.</u> (quotation omitted). [7]

Turning to Plaintiff's claims, the Court agrees with Defendants that Plaintiff has failed to present evidence that Plaintiff was discriminated against on the basis of her disabilities.  There is no dispute that (i) Plaintiff is disabled and (ii) she is qualified for special education.  But there is no evidence that Plaintiff did not have equal opportunity to secure similar educations as other students.  Likewise there is no evidence that Sanders or Tereau discriminated against Plaintiff solely on the basis of her disability.  <u>S.S.</u>, 532 F.3d at 453.  Tellingly, Plaintiff's response is silent on this issue.  Therefore, the Court grants summary judgment to Sanders and Tereau for Plaintiff's PWDCRA claims.

### D.  The Tort Claims (Counts IV, V, and VI)

---

[7] Courts have observed that the ADA and the PWDCRA "are not identical, and because federal laws and regulations are not binding authority on a Michigan court interpreting a Michigan statute, we caution against simply assuming that the PWDCRA analysis will invariably parallel that of the ADA."  <u>Peden v. City of Detroit</u>, 680 N.W.2d 857, 8870 (Mich. 2004).  Nevertheless, the PWDCRA "substantially mirrors the ADA," and generally requires the same proofs.  <u>Cotter v. Ajilon Servs.</u>, 287 F.3d 593, 597 (6th Cir. 2002), <u>abrogated on other grounds by</u> <u>Lewis v. Humboldt Acquisition Corp.</u>, 681 F.3d 312 (6th Cir. 2012).  The PWDCRA and the ADA "have the same purpose and use similar definitions and analyses, and Michigan courts rely on the ADA in interpreting the PWDCRA."  <u>In re Ozark</u>, No. 256851, 2004 WL 2913642, at *3 (Mich. Ct. App. Dec. 16, 2004).

The second amended complaint contains three state-law tort claims. Count IV alleges assault and battery committed by Tereau and Sanders for which GISD may be held vicariously liable. Count V alleges negligence by GISD. Count VI alleges negligence by Heffner and Sanders.

### 1. Assault and Battery (Count IV)

With regard to Plaintiff's claims of assault and battery by Tereau and Sanders and vicarious liability for GISD, Defendants assert the defense of government immunity. Because of the existence of genuinely disputed material facts, the Court cannot grant summary judgment based on this defense at this time.

Under Michigan law, governmental immunity from tort liability applies to an intentional tort by an individual governmental employee. Odom v. Wayne Cnty., 760 N.W.2d 217, 228 (Mich. 2008). Odom teaches that immunity attaches for an intentional tort if (i) the employee was acting or reasonably believed she was acting within the scope of her authority; (ii) the act was undertaken in good faith, or was not undertaken with malice, and (iii) the act was discretionary, as opposed to ministerial. Id.

Defendants argue that under Odom, Tereau and Sanders are entitled to governmental immunity, because even if the Court were to credit Plaintiff's story that Sanders hit Plaintiff, Sanders was privileged, as a teacher, to use corporal punishment. Defs.' Mot. at 33-34. (citing Willoughy v. Lehrbass, 388 N.W.2d 688 (Mich. Ct. App. 1986)). Further, Defendants argue that Tereau is shielded by governmental immunity because her conduct was reasonable and she was not charged with a criminal offense. Id. at 34. In response, Plaintiff argues that Tereau's alleged sexual molestation of Plaintiff defeats the essential element of "good faith" required to establish immunity. Pl.'s Resp. at 23. Plaintiff further contends that Sanders is not entitled to immunity because she inflicted corporal punishment upon Plaintiff, which is forbidden by statute. Pl.'s

Resp. at 23-24 (citing Mich. Comp. Laws § 380.1312).  Plaintiff also argues that GISD should be held vicariously liable for Tereau's and Sanders' intentional torts.  Id. at 34.

In analyzing whether Sanders is immune, the Court rejects Defendants' argument that Sanders was entitled to inflict corporal punishment.  Michigan law defines corporal punishment as "the deliberate infliction of physical pain by hitting, paddling, spanking, slapping, or any other physical force used as a means of discipline."  Mich. Comp. Laws § 380.1312(1).  Michigan law expressly forbids teachers from inflicting corporal punishment.  Mich. Comp. Laws § 380.1312(3) ("A person employed by . . . a local or intermediate school board or public school academy shall not inflict or cause to be inflicted corporal punishment upon any pupil under any circumstances.").  However, the statute allows teachers to use "reasonable physical force" to maintain order and control in statutorily defined instances, none of which is applicable here.[8] Willoughby, 388 N.W.2d at 697-698.  Griffin testified that Sanders told her that she had struck Plaintiff "over a newspaper," Griffin Dep. 43-44, a vague statement not further clarified in the record.  Griffin testified further that Plaintiff had been striking Sanders, and Sanders told Griffin that she struck Plaintiff so that Plaintiff would know how it felt.  Id.  Because Sanders fails to establish that the circumstance of her striking Plaintiff falls within the statutorily acceptable categories of reasonable force, the Court denies summary judgment to her on the Count IV battery claim.

The Court also cannot conclude as a matter of law that Tereau is entitled to immunity regarding Plaintiff's battery claim.  Tereau admitted to kissing Plaintiff on the head at EKLC,

---

[8] A teacher may use "reasonable physical force" to maintain order and control at school (a) to restrain or remove a disruptive student; (b) for self-defense or the defense of another; (c) to prevent a student from inflicting harm on himself; (d) to "quell a disturbance that threatens physical injury to any person"; (e) "to obtain possession of a weapon or other dangerous object"; and (f) to protect property.  Mich. Comp. Laws § 380.1212(4)(a)-(f).

although Tereau denies she had any offensive intent. Furthermore, the record indicates that Griffin witnessed other incidents of alleged kissing of Plaintiff by Tereau.[9] Thus, there is a genuine issue of material fact whether Tereau committed a battery upon Plaintiff and the Court denies summary judgment on this claim.

If Sanders or Tereau committed a battery, the question of vicarious liability of GISD will then have to be determined. Under Michigan law, a governmental unit may be held liable for the intentional misconduct of one of its employees under a respondeat superior theory so long as (i) the employee's misconduct fell within her course of employment and within the scope of her authority, and (ii) the employee committed a tort while engaged in an activity that was nongovernmental or proprietary. Hunley v. Phillips, 417 N.W.2d 485, 489 (Mich. Ct. App. 1987); Howerton ex rel. Howerton v. Blomquist, No. 05-71352, 2006 WL 2594476 (E.D. Mich. Sept. 8, 2006). For example, in Howerton the court held that a school district could not be held liable under respondeat superior for the alleged battery by a teacher who pushed a student into a locker to discipline the student. Id. at *4 n.3. The court stated that the teacher "was acting in the

---

[9] In an interrogatory answer, Griffin stated she had witnessed Tereau kissing Plaintiff four times. One alleged incident was in September 2007, during which Tereau "was passionately kissing my daughter with her body pressed tightly against my daughter's body which was pinned against the Wall. I reported it to Jennifer [Sanders] and demanded the abuse be stopped." Pl.'s Answers to Interrogs. at 13 (Dkt. 69-11). In October 2007, Griffin witnessed Tereau "locked" in a long kiss with Plaintiff. Pl.'s Answers to Interrogs. at 4 (Dkt. 69-12). Griffin maintains that she reported the incident to Sanders and to Principal Jeanne Quinlan. Pl.'s Answers to Interrogs. at 13 (Dkt. 69-11). In November 2007, Griffin witnessed Tereau "molesting my daughter on November 1, 2007 in a classroom." Pl.'s Answers to Interrogs. at 4 (Dkt. 69-12). Griffin added that she demanded to see Principal Quinlan and was refused. Instead she was told to write her complaint on a piece a paper. Griffin also claims that she reported the incident to Sanders. Pl.'s Answers to Interrogs. at 13 (Dkt. 69-11). Lastly, Griffin attests that, in December 2007, Tereau "had my daughter pinned up against the wall with her knee firmly placed against Katie's vagina." Griffin stated that she screamed at Tereau and Tereau ran away. Griffin left a note for Quinlan and maintains that "[n]othing was done." Id.

course of employment but did not commit the alleged tort in an activity that was non-governmental." Id.

Here, if Sanders and Tereau committed intentional torts, GISD may be held vicariously liable. Thus, at this stage, the Court cannot grant summary judgment to GISD on Plaintiff's intentional tort claims.

### 2. Negligence

In addition to the intentional torts, Plaintiff asserts negligence claims. These negligence claims implicate Michigan's Government Tort Liability Act (MGTLA) because they are asserted against GISD, and Heffner and Sanders, who are government employees.

Under the MGTLA, "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." Mich. Comp. Laws § 691.1407. The MGTLA also provides immunity to a government employee accused of negligence if (i) the employee was acting or reasonably believed she was acting within the scope of her authority; (ii) the governmental agency was engaged in the exercise or discharge of a governmental function; (iii) the employee's conduct does not amount to gross negligence that is the proximate cause of the injury or damage. Id. § 691.1407(1). Gross negligence is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Id. at § 14701(7)(a). If reasonable minds could reach "different conclusions with respect to whether a defendant's conduct amounted to gross negligence," summary judgment is improper. Kendricks v. Rehfield, 716 N.W. 2d 623, 625 (Mich. Ct. App. 2006).

### a. Negligence Claim Against GISD (Count V)

For the count of negligence against GISD, Defendants argue that the school district is statutorily immune. In response, "Plaintiff concedes that the School District is immune from the

negligence claim."  Pl.'s Resp. at 34.  The Court agrees.  Mich. Comp. Laws § 691.1407.
Accordingly, the Court grants summary judgment in favor of Defendants on Count V.

### b.  Negligence Claims Against Sanders and Heffner (Count VI)

Defendants assert that Plaintiff cannot establish the third element required by the
MGTLA – that Sanders' and Heffner's conduct amounted to gross negligence that proximately
caused Plaintiff's injuries.  Defs.' Mot. at 28-30.[10]  In response, Plaintiff alleges that Heffner and
Sanders breached their duty by allowing Plaintiff to fall at school.  Pl's Resp. at 33.  Plaintiff
argues that Sanders was grossly negligent by failing to prevent Tereau from assaulting Plaintiff
and allowing Plaintiff to be assaulted by a fellow student.  Id.  Plaintiff claims that Sanders was
grossly negligent by striking Plaintiff.  Second Am. Compl. ¶¶ 93, 95 (Dkt. 28).

In the instant case, both teachers (i) acted or reasonably believed they were was acting
within the scope of her authority while teaching at GISD schools, while (ii) teaching Plaintiff, or
in other words, discharging a governmental function.  Mich. Comp. Laws § 691.1407(1).  The
question of immunity turns upon whether Heffner's or Sanders' conduct amounted to "gross
negligence" that was "the proximate cause of the injury or damage."  Id.  "'[P]roximate cause' is
best understood as meaning the one most immediate, efficient, and direct cause preceding an
injury."  Robinson v. City of Detroit, 613 N.W.2d 307, 317 (Mich. 2000).

The court denies the motion with respect to the negligence theory premised upon Sanders
striking Plaintiff.  See Second Am. Compl. ¶ 95.  A jury could reasonably find that the striking
was done without the intent required for a battery, but still constituted gross negligence because

---

[10]  Defendants also argue that Michigan law does not recognize claims for "educational
malpractice."  Defs.' Mot. at 27-28.  The Court rejects this argument because, as Plaintiff argues,
Plaintiff's negligence claims are not about educational malpractice or, in other words, whether
Defendants educated Plaintiff properly; the claims involve whether Heffner and Sanders were
negligent in allowing Plaintiff to suffer injuries at school.  See Pl.'s Resp. at 33.

Sanders' blow was "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."  Mich. Comp. Laws § 14701(7)(a).

However, the Court finds that a fact issue does not exist whether Sanders' and Heffner's conduct amounted to gross negligence from the injuries Plaintiff sustained from her falls.  Both sides agree that Plaintiff was encouraged to walk.  Griffin testified that one of Plaintiff's goals was to increase her independence through walking.  Griffin Dep. at 108, 136-137.  Sanders and Heffner both testified that they wanted to increase Plaintiff's independence through walking.  Sanders Dep. at 65; Heffner Dep. at 55.  Plaintiff's ability to walk was discussed at IEP Team meetings.  Quinlan Dep. at 98.  For example, attached to Plaintiff's October 2008 IEP is a doctor's note recommending that "an aide should be assigned to assist [Plaintiff] during school hours."  10/14/2008 IEP (Dkt. 69-17).  The IEP also states that Plaintiff "should have supervision in the classroom, and while walking around the building."  Id.

Plaintiff's IEP was changed so that she would have a one-on-one aide to assist her walking at Clio High School.  Griffin Dep. at 192; 1/12/2009 IEP (Dkt. 67-18).  Under the section "Supplemental Aids and Services," Plaintiff's IEP indicated that a "para-educator will be with [Plaintiff] at all times throughout the day to provide supervision due to seizures and mobility instability."  Id.  Plaintiff's aides at Clio High School testified that Plaintiff always had an aide whenever she walked at the school.  Linda Phillip Dep. at 7 (Dkt. 67-20); Joe Finateri Dep. at 9 (Dkt 67-21).

It is true that Plaintiff fell numerous times.  But Sanders and Heffner dutifully recorded Plaintiff's falls.  See generally Accident Reports (Dkt. 69-7).  These matters were not concealed because the record contains several accident reports completed by Sanders and Heffner indicating that Plaintiff fell at school and detailing her injuries.  See, e.g., id. at 2-19.  The

accident reports indicate that a school employee, usually Plaintiff's teacher at the time, contacted Griffin.  Id.

Importantly, there is no evidence that the number of falling incidents was significantly large, given Plaintiff's condition.  In fact, Defendants' educational expert, Dr. Derrick Fries, testified that Plaintiff's falls at school were consistent with a neuro-normal student in a general education population.  Fries Report at 3 (Dkt. 67-19) (stating that Plaintiff fell about 5 times a year at school).  Notably, Plaintiff's educational experts do not address Plaintiff's falls at school in detail or mention Sanders or Heffner, but opine that "the school should have investigated the potential harm," "contacted medical staff," and convened an IEP meeting to consider Plaintiff's "need for IEP revisions, including physical therapy and functional mobility within the school building."  Davis and Livelli Report at 3-4 (Dkt. 69-24).  But nothing in the report suggests specific deficient conduct on the part of Sanders or Heffner.

Based on the foregoing record, the Court concludes that Plaintiff has not presented evidence giving rise to a triable issue of fact that Sanders' and Heffner's supervision of Plaintiff demonstrated a sufficient lack of concern amounting to gross negligence.  The teachers' conduct was not "so reckless as to demonstrate a substantial lack of concern for whether an injury" occurred to Plaintiff.  Mich. Comp. Laws § 691.14701(7)(a).  Accordingly, the Court grants summary judgment to Sanders and Heffner on Plaintiff's negligence claims premised on Plaintiff's falling at school based on the statutory immunity provided by the MGTLA.

The Court also grants summary judgment to Sanders for alleged conduct that forms the basis of Plaintiff's other remaining theories of negligence.  The record does not contain competent evidence supporting the allegation that Sanders placed Plaintiff in "harm's way" of

the alleged beating by an autistic student.[11]   Moreover, Sanders cannot be held liable for Tereau's conduct because Tereau, and not Sanders, was the "most immediate, efficient, and direct cause preceding an injury."  Robinson, 613 N.W.2d at 317.

### E.  The § 1983 Claims

Plaintiff's Count III alleges § 1983 claims against GISD, Heffner, Sanders, and Tereau. Second Am. Compl. ¶¶ 65-75.  Without jurisdiction over Plaintiff's § 1983 claims against Heffner because of Plaintiff's failure to exhaust administrative remedies under the IDEA, the Court focuses on the § 1983 claims against GISD, Sanders, and Tereau.

Defendants argue that the § 1983 claim against Sanders and Tereau should be dismissed because Plaintiff has not specified in what capacity she is suing the school employees.  Defs.' Mot. at 30-31.  Further, Defendants contend that Plaintiff has not pled and cannot prove a claim under Monell v. New York City Department of Social Services, 436 U.S. 658 (1978), against the school district because GISD took prompt action upon notice of Griffin's complaints.  Id. at 32. Defendants also assert that even if the Court finds that Plaintiff has properly pled a § 1983 claim, the employees are entitled to qualified immunity.  Id. at 32-33.  In response, Plaintiff argues that "the § 1983 question and the qualified immunity question should be submitted to the jury."  Id. at 29.  Plaintiff asserts that GISD "was made aware of all of the complaints of the abuse" of Plaintiff "and yet it took no action whatsoever."  Id. at 30.  Plaintiff also argues that she always intended to sue Sanders and Tereau in their individual capacities, since she named them and sought damages from them.  Pl.'s Resp. at 31.

---

[11] Even if Plaintiff had presented competent evidence regarding Sanders placing Plaintiff in harm's way, proximate cause would not be established because the autistic student, and not Sanders, was the immediate and direct cause preceding the injury.  Robinson, 613 N.W.2d at 317.

Turning to Plaintiff's § 1983 claim against Sanders and Tereau, Plaintiff is correct that the Sixth Circuit does not have a strict pleading rule regarding capacity.  Defendants rely upon Wells v. Brown, 892 F.3d 591 (6th Cir. 1989), which held that if a plaintiff did not plead a capacity – official or individual – the capacity will be construed as official.  But Plaintiff directs the Court to Moore v. City of Harriman, 272 F.3d 769, 772 (6th Cir. 2001), where the failure of the plaintiff to plead individual capacity in the complaint was held "not fatal if the course of proceedings otherwise indicate that the defendant received sufficient notice."  The court explained that the "'course of proceedings' test should be used "to determine whether § 1983 defendants have received notice of the plaintiff's intent to hold them personally liable."  Id. Factors a court must consider in applying the "course of proceedings" test are (i) the nature of the plaintiff's claims, (ii) requests for compensatory damages, and (iii) the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability."  Id. at n.1.

In this case, Sanders and Tereau received notice because Plaintiff never listed the position of the individuals in the caption of the governing complaint and has alleged acts to hold them individually liable, such as battery and negligence.  Defendants also raised the defense of qualified immunity.  Defs.' Mot. at 32.  This is sufficient to indicate that Sanders and Tereau were on notice that Plaintiff was seeking to hold them liable in their individual capacities.  Accordingly, the Court holds that Plaintiff has pled proper § 1983 claims against Sanders and Tereau in their individual capacities.

The Court next considers whether the individual capacity claim against Sanders is barred by qualified immunity.  "Whether qualified immunity applies to an official's actions is a question of law."  Barrett v. Steubenville City Schs., 388 F.3d 967, 970 (6th Cir. 2004).  "Once

28

the defense is raised, the plaintiff bears the burden of showing that the defendant's conduct was a violation" of a constitutional right.  Id.  To overcome qualified immunity, a plaintiff must show that (i) there was a violation of a constitutional right under the plaintiff's facts by a person who was acting under color of state law and (ii) that the right was clearly established.  Id. at 971-972.  The Sixth Circuit has ruled that "'to find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its court of appeals or itself.'"  Id. at 972 (quoting Ohio Civil Serv. Emps. Ass'n v. Seiter, 858 F.2d 1171, 1177 (6th Cir. 1988)).

With regard to Sanders striking Plaintiff, the Sixth Circuit has held that "[i]t is well established that persons have a fourteenth amendment liberty interest in freedom from bodily injury."  Doe v. Claiborne Cnty., 103 F.3d 495, 508 (6th Cir. 1996).  The liberty interest in freedom from bodily injury triggers the test for substantive due process, which requires the Court to examine "whether the conduct complained of 'shocks the conscience' of the [C]ourt."  Lillard v. Shelby Cnty. Bd. of Educ., 76 F.3d 716, 724 (6th Cir. 1996).  The Sixth Circuit has explained that under the "shocks the conscience" standard:

> [a] substantive due process claim is quite different than a claim of assault and battery under state tort law.  Substantive due process is concerned with violations of personal rights of privacy and bodily security.  The substantive due process inquiry must be whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.

Id. at 725.  (citation and ellipses omitted).

Here, the single striking of Plaintiff does not shock the Court's conscience.  Accepting Plaintiff's allegations as true, Sanders only struck Plaintiff once in retaliation.  Id. at 726 ("[I]t is simply inconceivable that a single slap could shock the conscience.").  The force applied was not severe or brutal.  Under Sixth Circuit law, Sanders striking Plaintiff is a simple tort and does not

29

rise to the level of a constitutional claim.  Accordingly, the Court grants summary judgment to Sanders as to the claim that she struck Plaintiff.[12]

Turning to the individual capacity claim against Tereau, the Court denies her qualified immunity.  Viewing the facts in a light most favorable to Plaintiff, there is a genuine issue of material fact whether Tereau sexually abused and/or committed batteries upon Plaintiff.  The Sixth Circuit has recognized that "a schoolchild's right to personal security and to bodily integrity manifestly embraces the right to be free from sexual abuse at the hands of a public school employee."  Doe v. City of Roseville, 296 F.3d 431, 438 (6th Cir. 2002).  Plainly, Plaintiff had a clearly established right to be free of abuse at school.  Id.  Therefore, Tereau is not entitled to qualified immunity and summary judgment to her on the § 1983 claim is denied.

With regard to Plaintiff's claim against GISD, local state governments can be liable under § 1983 if an "official policy is responsible for a deprivation of rights protected by the Constitution."  Monell, 436 U.S. at 690-691.  However, "a municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."  Id. at 691.  In cases where a school employee has abused a student, a claim for municipal liability under Sixth Circuit law requires:

> (1) the existence of a clear and persistent pattern of sexual abuse by school employees;
> (2) notice or constructive notice on the part of the School Board;
> (3) the School Board's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and
> (4) that the School Board's custom was the "moving force" or direct causal link in the constitutional deprivation.

Claiborne Cnty., 103 F.3d at 508.

---

[12] The Court also dismisses Plaintiff's § 1983 claim premised upon Sanders allegedly allowing an autistic student to strike Plaintiff because, as addressed above, Plaintiff has not presented any competent evidence that this occurred.

To hold a school district liable under § 1983, a plaintiff cannot rely solely on actions by school administrators regarding complaints of sexual abuse to show the existence of a policy or custom of a school board. McCoy v. Bd. of Educ., Columbus City Schs., No. 12-3040, 2013 WL 538953, at *5 (6th Cir. Feb. 13, 2013). Similarly, an allegation that a school board had "no policy, leaving individual complaints to be dealt with contextually per an administrator's discretion," fails to establish a custom or policy. Id. at *5. A plaintiff must "prove that the need to act was obvious and that the Board's decision not to have a policy in place was a conscious one." Id. Only in this fashion can the board's action be deemed "so permanent and well settled as to constitute a custom or usage with the force of law." Claiborne Cnty. 103 F.3d at 507 (quotation marks omitted).

Claiborne County is instructive in assessing Plaintiff's § 1983 claim against GISD with regard to the existence of a custom or policy. In Claiborne County, parents made complaints of sexual misconduct against a high school teacher during the 1989-1990 school year, which culminated in a state agency investigation of nine instances of abuse. Claiborne Cnty., 103 F.3d at 502. Although the investigation did not lead to criminal charges, the school board did not renew the teacher's contract for the 1990-1991 school year. Id. After the teacher entered into an agreement with the state agency that it would not pursue charges against him, the school board decided to re-hire the teacher in Fall 1990 on the recommendation of the school district superintendent. Id. at 503. During the teacher's second stint of teaching, a board member supervised the teacher due to the previous agency investigation. Id. The board member received two complaints that the teacher had acted inappropriately around female students during the second stint, and it was later determined that the teacher had an abusive sexual relationship with a student from Fall 1991 until December 1992. Id.

31

After the illicit relationship was uncovered, the student filed a civil action, which included a <u>Monell</u> claim against the school board for having a "custom" of ignoring the unconstitutional behavior of its employees.  <u>Id.</u> at 503-504.  The Sixth Circuit held that the school board could not be held liable because the plaintiff never presented evidence that showed "that the School Board, as an official policymaking body, had a 'custom' that reflected a deliberate, intentional indifference to the sexual abuse of its students."  <u>Id.</u> at 508.  The evidence may have demonstrated that the school board was reckless or negligent in inquiring further into the teacher's conduct, but the evidence did not demonstrate that the school board's "failure to act . . . was the direct result of a custom in the sense that the School Board consciously never acted when confronted with its employees' egregious and obviously unconstitutional conduct."  <u>Id.</u>

Like plaintiff's complaint against the school board in <u>Claiborne County</u>, Plaintiff's § 1983 claim against GISD fails.  The record does not include facts that GISD had any policy or custom responsible for depriving Plaintiff of her constitutionally protected rights.  Unlike the teacher in <u>Claiborne County</u>, Tereau's alleged misconduct occurred over a shorter time frame, involving five incidents over approximately six months.  The only evidence that Plaintiff marshals is that Griffin complained of Tereau's conduct to Sanders and the principal of EKLC, Jeanne Quinlan.  Pl.'s Answers to Interrogs. at 13 (Dkt. 69-11).  This evidence is weaker than the evidence in <u>Claiborne County</u>, where the board had direct involvement by (i) rehiring the teacher after there had been nine allegations of misconduct, (ii) having a board member supervise the teacher after he was re-hired, and (iii) the board member receiving two complaints of misconduct during his oversight of the teacher.  Here, Plaintiff only alleges that Griffin complained to Sanders and Quinlan and fails to point to collective action by GISD that would lay the foundation for a "policy" or "custom."  To make GISD liable for any action of Sanders or

Quinlan would, in effect, be to hold the school district liable under <u>respondeat superior</u>, which is "explicitly prohibited by <u>Monell</u>." <u>Claiborne Cnty.</u>, 103 F.3d at 508.

The Court also rejects Plaintiff's argument that the school "took no action whatsoever" because principal Quinlan conducted an internal investigation and the school cooperated with the local law enforcement investigation.  Even if the principal handled Griffin's complaints negligently or recklessly, her conduct does not establish a policy or custom of GISD. <u>See</u> <u>McCoy</u>, 2013 WL 538953, at *5 (rejecting the plaintiff's argument that school board had a policy of inaction because it allowed a school director of certificated personnel and a principal to address individual complaints).  Plainly, the evidence does not show that GISD, "as an official policymaking body, had a 'custom' that reflected a deliberate, intentional indifference to the sexual abuse of its students." <u>Claiborne Cnty.</u>, 103 F.3d at 508.

For these reasons,the  Court grants summary judgment to GISD on the § 1983 claim.

**F. Title IX Claim**

In Count VII, Plaintiff asserts a Title IX sex discrimination claim against GISD.    Under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, in pertinent part,

> [n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . .

20 U.S.C. § 1681.

A Title IX claim requires deliberate indifference, which occurs when "school officials are aware of the misconduct but do nothing to stop it, despite [the school district's] ability to exercise control over the situation." <u>Horner v. Ky. High Sch. Athletic Ass'n.</u>, 206 F.3d 685, 692 (6th Cir. 2000).   The school district's "'response to the harassment must be clearly unreasonable in light of the known circumstances to be actionable under Title IX.'" <u>McCoy</u>, 2013 WL 538953 at *3 (quoting <u>Davis v. Monroe Cnty. Bd. of Educ.</u>, 526 U.S. 629, 648 (1999)).  "Failure to take

33

any disciplinary action despite reports of repeated sexual harassment rises to the level of deliberate indifference.  In less obvious cases, the proportionality of the school's response in light of available information lies at the heart of the indifference analysis."  Id. (citations omitted).[13]

Defendants argue that Plaintiff's Title IX claim is barred because the school district was not deliberately indifferent to the complaint of sexual harassment presented by Plaintiff arising from Tereau's alleged kiss. Defs.' Mot. at 22-24.  Defendants state that, after Plaintiff alleged that Tereau had kissed Plaintiff, Principal Quinlan (i) spoke with Griffin; (ii) spoke with Tereau and her union rep; (iii) reprimanded Tereau; and (iv) had teachers observe Tereau.  The school also cooperated in investigations by the police and Michigan Department of Human Services.  Id. Defendants argue that this response was reasonable and, therefore, precludes Plaintiff from establishing deliberate indifference.  Id.

In response, Plaintiff recounts several incidents that occurred at EKLC and argues that their repetitive nature demonstrates the failure of the school to stop Plaintiff's abuse.  The incidents include: (i) Tereau repetitively kissing Plaintiff in Fall 2007; (ii) the failure to

---

[13] Unlike a § 1983 claim asserting municipal liability, there is no "custom" or "policy" requirement for a Title IX claim.  The U.S. Supreme Court has recognized this distinction between Title IX and § 1983 claims, stating:

> Even where particular activities and particular defendants are subject to both Title IX and the Equal Protection Clause, the standards for establishing liability may not be wholly congruent.  For example, a Title IX plaintiff can establish school district liability by showing that a single school administrator with authority to take corrective action responded to harassment with deliberate indifference. Gebser v. Lago Vista Independent School Dist., 524 U.S. 274, 290, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998).  A plaintiff stating a similar claim via § 1983 for violation of the Equal Protection Clause by a school district or other municipal entity must show that the harassment was the result of municipal custom, policy, or practice.  Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 257-258 (2009).

document and discipline Tereau; (iii) Principal Quinlan's failure to investigate and preventing investigation into the incidents. Griffin reported the incidents to Principal Quinlan and attended the meeting held in April 2008. Pl.'s Resp. at 18-22.

The deliberate indifference standard for sexual harassment must "be so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." Davis, 526 U.S. at 633. On the one hand, there is evidence that GISD investigated Griffin's complaints after the February 2008 hallway incident, held the meeting in April 2008, and cooperated with the state agencies. On the other hand, Plaintiff contends that her mother made many other complaints in September, October, November, and December 2007 because, she alleges, she kept encountering Tereau with Plaintiff. Defendants do not address these alleged incidents in 2007 in their motion and did not explore Griffin's interrogatory answers at Griffin's deposition.

The Court finds a genuine issue of material fact regarding the severity of the alleged harassment and whether GISD was deliberately indifferent to it. Griffin alleges that she reported abuse in September, October, November, and December 2007, but Principal Quinlan reports that she only heard of complaints in February 2008. This inconsistency regarding Griffin's reports is an issue for the fact finder to resolve. See, e.g., Vance v. Spencer Cnty. Pub. Sch. Dist., 231 F.3d 253 (6th Cir. 2000) (school did not investigate after student was stabbed in hand, did not investigate after student was sexually assaulted, and did not investigate Title IX complaint). Accordingly, the Court denies GISD summary judgment on Plaintiff's Title IX claim.

### G. ELCRA Sexual Harassment Claim against GISD

In Count VIII of the second amended complaint, Plaintiff asserts an ELCRA claim for sex discrimination under Mich. Comp. Laws § 37.2013(i) against GISD. Second Am. Compl. ¶¶

115-132.  Although Defendants mention Plaintiff's ELCRA claim in their motion for summary judgment, they do so only twice in passing: once in the table of contents and once in the caption for their argument against Plaintiff's Title IX claim.  Defs.' Mot. at iii, 22.

At the summary judgment stage, Defendants have the burden to inform the Court of the basis for their motion and to identify evidence, which Defendants believe demonstrate the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  By failing to address the basis to dismiss the ELCRA claim, Defendants have not carried their burden.  Id.  See also Rivet, v. State Farm Mut. Auto. Ins. Co., 316 F. App'x 440, 449 (6th Cir. 2009) (refusing to address "arguments that . . . are unsupported or undeveloped.").  Therefore, the Court will deny Defendant's motion with regard to Plaintiff's ELCRA claim.

### V. CONCLUSION

For the reasons stated above, the summary judgment motion of Defendants (Dkt. 67) is granted in part and denied in part as follows:

| | |
|---|---|
| Count I: | Granted as to Plaintiff's disability discrimination claims against GISD under the ADA and the Rehabilitation Act. |
| Count II: | Granted as to Plaintiff's claims under Michigan's Persons with Disabilities Civil Rights Act against all Defendants. |
| Count III: | Granted as to Plaintiff's § 1983 claims against GISD, Heffner, and Sanders, but denied as to Plaintiff's § 1983 claim against Tereau. |
| Count IV: | Denied as to Plaintiff's claims for assault and battery to Defendants GISD, Sanders, and Tereau. |
| Count V: | Granted as to Plaintiff's claim for negligence against GISD. |
| Count VI: | Granted as to Plaintiff's claim for negligence against Heffner.  Granted in part as to Plaintiff's claim for negligence against Sanders, but denied in part to the extent that it is premised upon Sanders allegedly striking Plaintiff. |

Count VII:      Denied as to Plaintiff's sex discrimination claim against GISD under Title IX of 20 U.S.C. § 1681.

Count VIII:     Denied as to Plaintiff's sex discrimination claim against GISD under the ELCRA.

SO ORDERED.

Dated:  July 19, 2013                    s/Mark A. Goldsmith
        Flint, Michigan                  MARK A. GOLDSMITH
                                         United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 19, 2013.

                                         s/Deborah J. Goltz
                                         DEBORAH J. GOLTZ
                                         Case Manager